# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00770-CV

**El Paso County Hospital District d/b/a R. E. Thomason General Hospital; Conroe Hospital Corporation d/b/a Conroe Regional Medical Center; Bay Area Healthcare Group, Ltd. d/b/a Corpus Christi Medical Center; Sunbelt Regional Medical Center, Inc. d/b/a East Houston Regional Medical Center; El Paso Healthcare System, Ltd. d/b/a Las Palmas Medical Center and Del Sol Medical Center; Methodist Healthcare System of San Antonio, Ltd. d/b/a Methodist Specialty & Transplant Hospital; Northeast Methodist Hospital; Southwest Texas Methodist Hospital; Columbia/St. David's Healthcare System, L.P. d/b/a North Austin Medical Center; HCA Health Service of Texas, Inc. d/b/a Rio Grande Regional Hospital; St. David's Medical Center and Round Rock Medical Center; Brownsville-Valley Regional Medical Center, Inc. d/b/a Valley Regional Medical Center, Appellants**

**v.**

**Texas Health and Human Services Commission and
Don Gilbert, Commissioner, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. GN203154, HONORABLE PETER M. LOWRY, JUDGE PRESIDING

## O P I N I O N

Appellants (the Hospitals) sued the Health and Human Services Commission (the Commission) seeking a declaration (1) that the Commission's cut-off date for the submission of paid claims to determine reimbursement rates for inpatient Medicaid services is invalid under the Administrative Procedure Act (APA) and (2) that the Commission failed to follow its administrative appeals rule applicable to the Hospitals' claims. *See* Tex. Gov't Code Ann. § 2001.038(a) (West 2000). The Commission is statutorily required to adopt rules that assure that payment rates,

determined on a prospective basis, are reasonable and adequate to meet the costs incurred by hospitals rendering Medicaid services. *See* Tex. Hum. Res. Code Ann. § 32.028(d)(1) (West Supp. 2004-05). The cut-off date at issue comes from the Commission's interpretation of its own rule describing how to prospectively calculate Medicaid reimbursement rates. We agree with the trial court that imposition of the cut-off date was not a rule, and that the Commission properly applied its administrative appeals rule to the Hospitals' claims.

## BACKGROUND

The dispute in this case requires us to determine whether the cut-off date the Commission used to facilitate the calculation of Medicaid reimbursement rates is a rule under the APA. We will begin with a brief explanation of how hospitals are reimbursed for inpatient Medicaid services in Texas.

Medicaid is a federal-state assistance program, run by state governments within federal guidelines. *See* 42 U.S.C.A. §§ 1396-1396v (West 2003). It funds health care services provided to eligible recipients, low-income people of any age, from federal, state, and local taxes. *Id*. To qualify for federal assistance, a state must submit and have approved a "plan for medical assistance." *See id*. § 1396a(a). The plan must establish a scheme for reimbursing health care providers for medical services provided to Medicaid recipients. Individual states enjoy broad discretion in devising their reimbursement plans. *West Virginia Univ. Hosp. v. Casey*, 885 F.2d 11, 26 (3d Cir. 1989).

The Commission administers the Medicaid program in Texas. *See* Tex. Hum. Res. Code Ann. §§ 32.028(a)-(d), 32.0281(a) (West Supp. 2004-05) (granting Commission authority to

2

adopt rules and standards governing determination of rates paid for medical assistance and requiring that procedures for adopting rules be governed by APA). In 1986, the Commission implemented a prospective system for reimbursing Texas hospitals for inpatient Medicaid services.[1] *See id.* § 32.028(d); *see also* 1 Tex. Admin. Code § 355.8063 (2004). Under this system, hospitals know the rate at which they will be reimbursed for specific services before providing those services to individual patients. Scott Reasonover, manager of the Hospital Rate Analysis Division of the Commission, explained that the Texas plan was patterned after the federal Medicare system, in which payments to hospitals are based on diagnoses of individual patients. The purpose of the prospective system was to provide hospitals with an incentive to control costs.

The specific amount of reimbursement for a particular hospital inpatient admission is determined by multiplying the Standard Dollar Amount by the relative weight of the Diagnosis Related Group (DRG) assigned based on the patient's principal diagnosis. *Id.* Reasonover stated that the DRG method categorizes individual diseases, disorders, and illnesses based on complexity and cost of treatment and that the DRG relative weight is "a measure of the average medical complexity and cost incurred by all hospitals for one particular DRG relative to the average medical complexity and cost for all DRGs." *See also id.* § 355.8063(b)(1). He further explained that the Standard Dollar Amount is essentially a hospital's average payment for providing Medicaid inpatient services during a twelve-month base period. *See also id.* § 355.8063(b)(4).

The Standard Dollar Amount and the DRG relative weights are recalculated every three years to account for inflation and changes in medical procedures and technology that impact

---

[1] Previously, Texas hospitals were reimbursed under a retrospective system in which payments were based on the actual costs incurred in the provision of medical services.

3

the cost of medical services. *See id*. § 355.8063(b)(5). The first step in this process is selecting a base-year.[2] At the close of the base-year, the Commission selects all claims with an admission date in the base-year that have been paid either in the base-year or by February 28th of the following year.[3] In an effort to obtain the largest sample of base-year claims, the Commission extended the time to receive payment six months beyond August 31 in order to account for admissions that occurred toward the end of the base-year and for complex cases that generally take longer to get paid. After February 28th of the year following the base-year, no new claims are added to the sample of base-year claims used to calculate the new Standard Dollar Amounts and DRG relative weights.[4] Between February 28 and August 31, the Commission recalculates the Standard Dollar Amounts and DRG relative weights, informs hospitals of the proposed new rates, hears appeals regarding the process, and finalizes the new rates. The new rates go into effect on the first day of the following state fiscal year. The entire process from the beginning of the base-year to the end of the recalculation period takes two years to complete.

---

[2] The Commission has defined a base-year as "a 12-consecutive-month period of claims data selected by the [the Commission] or its designee as the basis for establishing the payment divisions, standard dollar amounts, and relative weights." 1 Tex. Admin. Code § 355.8063(b)(5). The Commission has decided that the base-year will correspond to the state fiscal year, which runs from September 1 of one year to August 31 of the next.

[3] For ease of reference, we will refer to claims that meet this criterion as "base-year claims." Furthermore, the February 28th deadline for submitting paid claims to be included in the base-year claims database is the cut-off at issue in this case.

[4] Hospitals may request both formal and informal reviews of claims excluded or included in the base-year claims data if they believe that a mechanical, mathematical, or data entry error exists. 1 Tex. Admin. Code § 355.8063(k)(1)(A).

The Hospitals complained that the February 28th cut-off does not provide sufficient time beyond the end of the base-year, especially for complex procedures that often require more time to be paid. They insisted that such a deadline, apart from a rule, is arbitrary and capricious. The Hospitals sought a declaration that the February 28th cut-off was invalid because it operated as a rule under the APA, but was implemented without following APA procedures and that the Commission failed to follow an applicable appeals rule. *See* Tex. Gov't Code Ann. § 2001.038(a). The Hospitals argued further that their legal right to be reimbursed reasonably and adequately was impaired by the application of the February 28th cut-off because it systematically excluded high dollar claims from the base-year claims database, thereby underestimating the Hospitals' costs. The trial court rejected the Hospitals' claims, and this appeal followed.

## STANDARD OF REVIEW

A rule is voidable unless a state agency adopts it in the manner set forth by the APA. Tex. Gov't Code Ann. § 2001.035 (West 2000). The validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.[5] *Id.* No standard of review is prescribed and judicial review of rules is thus largely unlimited in time and scope. *Railroad Comm'n of Texas v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 75 (Tex. 2003).

_____

[5] The Commission concedes that if the cut-off is determined to be a rule under the APA, the Hospitals have standing to contest its validity.

5

**DISCUSSION**

*Rules under the APA*

In their first issue, the Hospitals contend that the February 28th cut-off is invalid because it constitutes a rule that was improperly promulgated under the APA. A rule under the APA is:

(A)  a state agency statement of general applicability that:

   (i)  implements, interprets, or prescribes law or policy; or

   (ii)  describes the procedure or practice requirements of a state agency;

(B)  includes the amendment or repeal of a prior rule; and

(C)  does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Tex. Gov't Code Ann. § 2001.003(6) (West 2000). Administrative rules are ordinarily construed in the same way as statutes and an agency's interpretation of its own rule is entitled to deference by the courts unless it is plainly erroneous. *See Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976); *Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991); *Medical Sys., L.L.C. v. State of Tex.,* 108 S.W.3d 333, 337 (Tex. App.—Austin 2003, no pet.). When there is vagueness, ambiguity, or room for policy determinations in a rule, we defer to an agency's interpretation unless it is plainly inconsistent with the language of the rule. *BFI Waste Sys. of N. Am. v. Martinez Environmental Group*, 93 S.W.3d 570, 575-76 (Tex. App.—Austin 2002, pet. denied). "Greater deference is given to an agency's interpretation that is longstanding and applied uniformly." *Tennessee Gas Pipeline Co. v. Rylander*, 80 S.W.3d 200, 203 (Tex. App.—Austin 2002,

6

pet. denied). Furthermore, because it represents the view of the regulatory body that drafted and administers the rule, the agency interpretation actually becomes part of the rule. *BFI*, 93 S.W.3d at 575-76.

The Commission has statutory authority to adopt reasonable rules governing the determination of rates paid for inpatient hospital services on a prospective basis. Tex. Hum. Res. Code Ann. § 32.028(d). In addition, the Commission is required to describe by rule the process used to determine payment rates for medical assistance. *Id*. § 32.0281(a). As required, the Commission adopted rules that described the prospective payment system used to reimburse hospitals for the provision of inpatient Medicaid services. *See* 1 Tex. Admin. Code Ann. § 355.8063. The Commission insists that the February 28th cut-off is not a new rule, but is an internal interpretation of the rule defining a base-year. The Hospitals argue that the cut-off functions as a rule because it (1) is an agency statement of general applicability that either implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of the Commission; (2) amends the definition of base-year because its application results in the exclusion of claims that occurred during the base-year; and (3) affects their private rights. *See* Tex. Gov't Code Ann. § 2001.003(6).

Assuming, without deciding, that the February 28th cut-off is a statement of general applicability that either implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of a state agency, it is a statement regarding the internal management of the Commission that neither (1) amends or repeals a prior rule, (2) nor affects the private rights of the Hospitals. Therefore, it is not a rule under the APA. *Id*.; *see WBD Oil & Gas Co.*, 104 S.W.3d at 79 (explaining that not all agency statements are rules under APA).

7

The Hospitals contend that the phrase "a 12-consecutive-month period of claims data selected by the department" in the definition of base-year precludes the Commission from excluding any claims for treatment received during the base-year. According to the Hospitals, the rule grants the Commission the right to select the 12-consecutive-month period, but not the right to select some and exclude other claims data. However, the Commission has interpreted the phrase in the rule to give it discretion to limit the length of time after a 12-consecutive-month period ends for admitting claims that will be used in the rate-setting process. It has set that limit at six months. The Commission's interpretation of the rule has been consistently applied since the implementation of the prospective payment system in 1986; furthermore, the Commission has never interpreted the rule to require that the selected claims data include every single claim from the base-year. *See Tennessee Gas Pipeline Co. v. Rylander*, 80 S.W.3d 200, 203 (Tex. App.—Austin 2002, pet. denied). The February 28th cut-off, enacted to further internal management of the claims in a timely fashion, is grounded in this interpretation.

The Commission's prospective payment methodology was not designed to reimburse hospitals for actual costs of in-patient Medicaid services. The goal, as explained by Reasonover, is to calculate an average cost for specific services that may pay some hospitals more and some less than their actual costs. The Commission's interpretation is neither plainly erroneous nor inconsistent with the language defining a base-year, and it does not undermine the goal of the prospective system because the claims data is used to approximate average costs, not actual costs. *See Lewis*, 540 S.W.2d at 310; *Gulf States*, 809 S.W.2d at 207; *Medical Sys., L.L.C.*, 108 S.W.3d at 337. The Commission wrote the rule defining base-year; therefore, its interpretation is entitled to great

8

deference.  *Id*.  Both the Hospitals and the Commission agree that the February 28th cut-off had been consistently used and applied for seventeen years before this challenge.  The application of the February 28th cut-off does not amend the rule defining base-year because its application is consistent with the Commission's long-standing interpretation of the rule.

Furthermore, the Commission's interpretation does not affect the Hospitals' private rights or procedures.  Section 32.028(d)(1) of the human resources code provides the Hospitals with a legal right to be reimbursed for Medicaid services at rates that are reasonable and adequate to meet their costs.  *See* Tex. Hum. Res. Code Ann. § 32.028(d)(1).  The Hospitals do not have a right to compel the Commission to include all claims for Medicaid services provided during the base-year in the claims data.  The Hospitals contend that the application of the February 28th cut-off affects their right to be reimbursed reasonably and adequately because it excludes high dollar claims from the base-year claims data, thereby understating the Hospitals' costs.  Essentially, the Hospitals argue that if the exclusion of some claims could decrease their reimbursement rates then their right to be reasonably and adequately compensated is affected.  We disagree.

The Commission concedes that the February 28th cut-off may potentially affect the Hospitals' reimbursement rates.  However, even if the exclusion of claims does lead to a decrease in reimbursement rates, it does not necessarily follow that the Hospitals' right to reasonable and adequate reimbursement rates has been affected.  The Hospitals' theory that any potential decrease in reimbursement rates affects their right to be reasonably and adequately compensated is based on the false assumption that a hospital's reimbursement rate must actually equal that hospital's costs.

The assumption would be true in a retrospective system; however, it makes little sense under a prospective system where reimbursement rates are set in advance based on estimated costs.

Additionally, had the legislature intended for section 32.028(d)(1) to require the Commission to reimburse hospitals at rates equal to their costs, then it could have explicitly stated so as it did in sections 32.028(e) and (f). *Compare id. with id.* §§ 32.028(e), (f) (sections (e) and (f) explicitly state that Commission is required to reimburse federally qualified health centers and rural health clinics for *100 percent* of reasonable costs incurred in rendering Medicaid services). Therefore, we hold that the mere possibility that the Hospitals' reimbursement rates could decrease as a result of the exclusion of some claims from the base-year claims database does not sufficiently demonstrate that their right to be reasonably and adequately compensated has been affected.

We hold that the February 28th cut-off for the submission of paid claims is not a rule under the APA but a statement regarding the internal management of the Commission that neither (1) amends or repeals a prior rule nor (2) affects the private rights of the Hospitals. Tex. Gov't Code Ann. §§ 2001.003(5)(B), (C). Thus, the Hospitals are not entitled to the declaratory relief provided by the APA. *See* Tex. Gov't Code Ann. § 2001.038(a) (stating that the validity or applicability of *a rule* may be determined in action for declaratory judgment).[6] We overrule the Hospitals' first issue.

---

[6] The Hospitals also asserted that the cut-off was invalid because it conflicted with the Commission's statutory duty to assure that reimbursement rates are reasonable and adequate to meet the costs of hospitals that provide inpatient Medicaid services, and that the cut-off cannot be justified on the basis of administrative necessity. Because we hold that the February 28th cut-off is not a rule under the APA, we need not reach these issues.

10

*Applicability challenges under the APA*

In their second issue, the Hospitals allege that the Commission failed to properly apply an administrative appeal rule. The Commission's appeal rules state that a hospital may request an informal review of the data used to determine the hospital's reimbursement rates if the hospital believes that the Commission made a mechanical, mathematical, or data entry error. *See* 1 Tex. Admin. Code § 355.8063(k)(1)(A). If the hospital is dissatisfied with the review, it may request a formal hearing. *Id.* In addition, a party may appeal Commission rules regarding payment rates in a contested case hearing. *See* Tex. Hum. Res. Code Ann. § 32.0821(e) (West 2001). The Hospitals' informal appeals regarding the exclusion of claims paid after the February 28th cut-off were all denied. The Hospitals then requested a formal hearing before the State Office of Administrative Hearings. The Commission did not act on the Hospitals' requests. The Hospitals contend that the Commission was required to refer their appeals for formal hearings and that its failure to do so violated its own rules.

A party is entitled to declaratory relief regarding the applicability of a rule to a particular fact situation. *See* Tex. Gov't Code Ann. § 2001.038(a); *City of Alvin v. Public Util. Comm'n of Tex.*, 143 S.W.3d 872, 879 (Tex. App.—Austin 2004, no pet. h.). As we stated earlier, administrative rules are ordinarily construed in the same way as statutes, and an agency's interpretation of its own rule is entitled to deference by the courts unless it is plainly erroneous. *See* cases cited *supra*. Statutory construction is a question of law, which we review *de novo*. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). Our goal is to ascertain and give effect to the legislature's intent for the provision in question. *Continental Cas. Co. v. Downs*, 81 S.W.3d

11

803, 805 (Tex. 2002). In order to ascertain legislative intent, we first look to the plain and common meaning of the words used by the legislature. Tex. Gov't Code Ann. § 311.011 (West 1998). Unless a different construction is expressly provided by statute the word "may" creates either discretionary authority or grants permission or a power. *Id.* § 311.016.

The use of the word "may" in the Commission's administrative appeals rule grants hospitals permission to request both informal and formal reviews of disputed calculations. *See* 1 Tex. Admin. Code § 355.8063(k)(1)(A). However, there is nothing in the plain language of the rule that compels the Commission to grant the request. *Id.* In this case, the Commission granted the Hospitals' requests for informal reviews of excluded data and denied most of them because they either failed to meet the February 28th cut-off or were not mechanical, mathematical, or data entry errors. The Commission's refusal to act on the Hospitals' subsequent requests for formal reviews did not violate its appeals rule because the grant or denial of requests for review is discretionary. *Id.*

The Hospitals argue further that the Commission violated its appeals rule when it denied the informal reviews because mathematical or data entry errors existed in the base-year claims data. The Hospitals claim that the February 28th cut-off systematically excludes high-dollar claims from the base-year claims data, which lowers the Standard Dollar Amount, thereby decreasing the reimbursement rates. Essentially, the Hospitals contend that the Commission's methodology for determining what constitutes a base-year claim creates mathematical or data entry errors in the base-year claims data because not all claims that occurred in the base-year are included. However, the Commission has specifically denied hospitals the right to appeal the prospective payment

12

methodology used to calculate reimbursement rates. *See id*. § 355.8063(k)(2). Because the mathematical or data entry errors alluded to by the Hospitals did not pertain to individual claims but, rather, to how the claims selection process in the aggregate could lead to mathematical or data entry errors, we hold that the Commission was not required to act on the Hospitals' requests for formal reviews and that it could properly deny requests for review that challenge the prospective payment methodology. We overrule the Hospitals' second issue.

## CONCLUSION

Because we hold that the February 28th cut-off for the submission of paid claims to be included in the base-year claims data is not a rule under the APA and that the Commission did not violate its own appeal rule by refusing to act on the Hospitals' requests for formal reviews, we affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: January 21, 2005

13