IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0372
════════════
 
El Paso Hospital District 
d/b/a 
R.E. Thomason General 
Hospital District, et al., Petitioner,
 
v.
 
Texas Health and Human Services 
Commission
and Don Gilbert, 
Commissioner, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
 
Argued November 
15, 2006
 
 
Justice Medina delivered the opinion of 
the court.
 
In this 
appeal from the denial of a declaratory judgment, we are asked whether the Texas 
Health and Human Services Commission’s (HHSC) data-collection method for 
calculating prospective Medicaid inpatient service rates is an agency rule as 
defined by the Administrative Procedures Act (APA). Tex. Gov’t Code § 2001.003(6). If it is, we 
are further asked to declare the rule invalid because HHSC neglected to adopt it 
as the APA requires. We are further asked to determine whether HHSC failed to 
follow the procedure prescribed by other rules that govern an interested party’s 
administrative appeal of HHSC’s proposed rates. The 
trial court denied all relief, and the court of appeals affirmed its judgment. 
161 S.W.3d 587.
            
We conclude that HHSC’s methodology is an invalid rule 
and remand that part of the case for further proceedings. We further conclude 
that HHSC did not err in applying the rules applicable to the administrative 
appeal of its proposed Medicaid rates. Accordingly, we reverse the court of 
appeals’ judgment, in part, and affirm it, in part.
I
            
Fourteen Texas 
hospitals sued HHSC asking that HHSC’s cutoff date for 
submitting paid claims data to determine reimbursement rates for inpatient 
Medicaid services be declared invalid. The Hospitals claim the cutoff date is 
improper either because it is an invalid rule under the APA, or because it 
conflicts with relevant provisions of the Human Resources Code and HHSC’s administrative rules. Additionally, the Hospitals 
assert that HHSC failed to follow its administrative appeals rules in reviewing 
the Hospitals’ claims. A general understanding of the Medicaid program and the 
process HHSC uses to reimburse for Medicaid services is necessary before 
addressing these complaints.
            
Medicaid is a health insurance program, jointly operated and funded by the 
federal and state governments, for the medical care of low-income and other 
eligible persons. See generally Pub. L. No. 89-97, 79 Stat. 286 (1965) 
(codified as amended at 42 U.S.C. §§ 1396-1396u); see also Wilder v. 
Va. Hosp. Ass’n, 
496 U.S. 498, 502 (1990)(citing 42 U.S.C. § 1396). While federal law establishes 
Medicaid’s basic parameters, each state decides eligible groups, types and range 
of services, payment levels for services, and administrative services. 
See 42 C.F.R. § 430.0. Specifically, each state prepares a written plan 
describing the nature and scope of its Medicaid program. Id. § 
430.10. Once the plan is approved by the Secretary of Health and Human 
Services, the state is responsible for operating the program to conform with the federal guidelines. 42 U.S.C. § 
1396. In Texas, HHSC is the agency charged with this 
responsibility. See Tex. Hum. 
Res. Code §§ 32.028(a)-(d), 
32.0281(a).
            
Under the approved plan, HHSC is responsible for reimbursing hospitals that 
provide services to Medicaid patients. See 42 U.S.C. § 1396a(a)(13). The reimbursement methodology in Texas is a prospective 
payment system. Tex. Hum. Res. Code § 
32.028(d). Under this system, HHSC sets the rates paid to 
hospitals for each service in advance, which allows hospitals to know the rate 
at which they will be reimbursed for specific services. See Wilder, 496 
U.S. at 506. The prospective 
payment system encourages hospitals to control costs for inpatient Medicaid 
services so they can earn a profit under the pre-determined rates. Id. at 
506-07.
            
To implement this system, HHSC has adopted specific rules to determine the 
prospective payment rates. Although the rate-calculation rules are detailed and 
complex, they generally involve three components: 1) the data that forms the 
basis for the rate calculation, 2) the formula that converts the data into 
reimbursement rates, and 3) the process HHSC uses to collect the data and 
calculate rates.        
            
The first component, the data used for the rate calculation, is comprised of 
both cost and claims data. See 1 Tex. Admin. Code § 
355.8063(c). Cost data are derived from the hospitals’ cost 
reports that allocate a portion of their total costs to the Medicaid program 
based on how many days Medicaid patients stay in the hospital, charges 
associated with such patients, and other factors. See id. § 355.8063(l). Claims data are derived from hospital claims 
requesting payment for services rendered to Medicaid patients under existing 
reimbursement rates. Id. § 355.8063(b)(5).
            
The second component, the rate-calculation formula, converts the cost and claims 
data into reimbursement rates that approximate a hospital’s cost for treating a 
Medicaid patient. The formula achieves this goal by taking a group of hospitals 
with similar Medicaid cost experiences, deriving those hospitals’ approximate 
costs to treat an average Medicaid case, then adjusting that cost to reflect the 
relative expense of a particular service. Id. § 355.8063(e). The result is the new rate to be paid to that 
hospital group for that service. See id. Specifically, the rate for a 
service is determined by multiplying (1) the relative weight of the patient’s 
diagnosis-related group by (2) the standard dollar amount for the hospital’s 
payment division. Id. Although several steps are involved 
in calculating the diagnosis-related groups and standard dollar amounts, the 
foundation for the calculations, and what is important for purposes of this 
appeal, is the “base year” that we will later discuss in more detail. Id. § 
355.8063(b)(5). 
            
The third component for determining prospective rates for Medicaid services is 
HHSC’s process for collecting the data. This process 
requires that the prospective reimbursement rates be recalculated at least every 
three years to account for inflation and medical advances that effect the cost of medical services. See id. HHSC’s current policy is to recalculate the rates on a 
three-year cycle. See id. The first year is the base year, and only 
claims data from Medicaid patients admitted in this base year may be included in 
the rate calculation. See id. § 355.8063(n). The next year HHSC collects 
the data and converts it into prospective reimbursement rates. See id. 
These rates then go into effect in the third year and remain effective for three 
years during which this process is repeated. See id. During the third 
year, HHSC makes changes only if a hospital successfully appeals a mathematical 
or data entry error. Id. § 355.8063(k)(1). For example, the base year at issue here was the state 
fiscal year from September 1, 1999, to August, 31, 2000. The process for 
collecting data and generating rates occurred between September 1, 2000, and 
August 31, 2001. These rates were in effect from September 1, 2001, through 
August 31, 2004.
            
This appeal focuses on HHSC’s interpretation of what 
constitutes a “base year.” HHSC’s rules define the 
“base year” as “[a] 12-consecutive-month period of claims data selected by the 
[department] or its designee.” Id. § 355.8063(b)(5). HHSC requires that the “12-consecutive-month period” 
run concurrently with the State’s fiscal year from September 1 to August 31. 
See id. § 355.8063(n). HHSC gathers all claims data for Medicaid patients 
admitted during that fiscal year but uses only the claims that Medicaid actually 
pays to assure that the data is from Medicaid-eligible claimants. Most important 
to this appeal, HHSC imposes a “cutoff” date, selecting claims data only from 
base-year claims that are paid within the fiscal year plus a six-month grace 
period (the “February 28 cutoff”). Put simply, when determining what claims go 
into the rate calculation, HHSC considers only the claims of Medicaid patients 
admitted during the base year that are actually paid within six months of the 
base-year’s end. Claims for all patients admitted during the base year, but not 
paid by February 28, are not included in determining the prospective 
reimbursement rates. Between February 28 and August 31, HHSC recalculates the 
standard dollar amount and diagnosis-related group relative weights, informs 
hospitals of the proposed new rates, hears appeals, and finalizes the new rates 
before they go into effect on September 1 of that year. 
            
The problem with this process, according to the Hospitals, is that HHSC does not 
use twelve consecutive months of claims data in computing rates as its rules 
require. Instead, the Hospitals argue that HHSC’s 
six-month cutoff arbitrarily excludes relevant Medicaid claims simply because 
they are not paid quickly enough. The Hospitals submit that under HHSC’s interpretation of the rule, only 95-97% of base-year 
claims are used to calculate the rates, while the rules actually require a “true 
cost average.” 
            
Dissatisfied with this process, the Hospitals sought administrative review of 
the reimbursement rates from fiscal year 2000, asking 
HHSC to include claims data excluded by the February 28 cutoff. HHSC denied the 
Hospitals’ request and refused to refer the case to the State Office of 
Administrative Hearings for a formal hearing. The Hospitals then sued HHSC for 
declaratory and injunctive relief to enjoin it from applying the February 28th 
cutoff. The Administrative Procedures Act authorizes 
declaratory relief when determining the validity or applicability of a rule, if 
the plaintiff alleges “that the rule or its threatened application interferes 
with or impairs, or threatens to interfere with or impair, a legal right or 
privilege of the plaintiff.” Tex. Gov't Code § 
2001.038. 
            
The trial court granted the Hospitals’ request for a temporary injunction, but, 
at a subsequent trial on the merits, a visiting judge ruled against the 
Hospitals on all claims. The court of appeals affirmed, 161 S.W.3d 587, and this 
appeal followed.
II
            
The Hospitals present two arguments on appeal. First, they ask that we declare 
the February 28 cutoff invalid either because it constitutes an improperly 
promulgated rule or because it conflicts with the applicable provisions of the 
Texas Human Resources Code and the Texas Administrative Code. See 
generally Tex. Hum. Res. Code § 32.028(d); 1 
Tex. Admin. Code § 355.8063. Second, the 
Hospitals argue that HHSC failed to refer their administrative appeal relating 
to the rate issue for formal hearing, as required by HHSC’s rules and the Texas Human Resources Code. They ask 
that we either direct HHSC to refer their appeal or remand the case for further 
proceedings.
A
            
HHSC is charged with establishing methods for administering and adopting 
necessary rules for the proper and efficient operation of medical assistance 
programs. Tex. Hum. Res. Code § 
32.021(c). Specifically, HHSC has statutory authority to 
adopt “reasonable rules and standards governing the determination of rates paid 
for inpatient hospital services on a prospective payment basis.” Id. § 
32.028(d). HHSC also has authority to adopt rules relating to the payment 
rates that describe the process used to determine the rates. Id. § 
32.0281(b). HHSC further must describe the prospective payment system 
used to reimburse hospitals that provide inpatient Medicaid services. See 
1 Tex. Admin. Code § 355.8063(a). 
            
HHSC argues that it complied with these statutes, and that the February 28 
cutoff is not a rule itself, but rather its interpretation of the base-year 
rule. The Hospitals disagree, arguing the February 28 cutoff falls squarely 
within the APA’s definition of a rule. We agree with 
the Hospitals. Under the APA, a rule: (1) is an agency statement of general 
applicability that either “implements, interprets, or prescribes law or policy” 
or describes [HHSC’s] “procedure or practice 
requirements;” (2) “includes the amendment or repeal of a prior rule;” and (3) 
“does not include a statement regarding only the internal management or 
organization of a state agency and not affecting private rights or procedures.” 
Tex. Gov’t Code § 
2001.003(6)(A)-(C). 
            
First, the February 28 cutoff is a statement of general applicability that 
implements law or describes procedure. See id. § 2001.003(6)(A)(i)-(ii). The term “general 
applicability” under the APA references “statements that affect the interest of 
the public at large such that they cannot be given the effect of law without 
public input.” R.R. Comm’n of 
Tex. v. WBD Oil and Gas Co., 104 S.W.3d 69, 
79 (Tex. 
2003). The prospective payment system and its calculations affect all 
hospitals receiving reimbursement for inpatient Medicaid services. Thus, no 
question exists that the February 28 cutoff is a statement of general 
applicability because it applies to all hospitals.
            
The cutoff further implements policy and describes HHSC’s data collection procedure. HHSC is required to 
describe the process used to determine payment rates through its formally 
promulgated rules, and HHSC’s rule provides that it 
will use a base year, “[a] 12-consecutive-month period of claims data,” to 
calculate the Hospitals’ rates. 1 Tex. Admin. Code § 
355.8063(b)(5). The effect of HHSC’s February 28 cutoff, however, is to modify the 
base-year rule by controlling the data HHSC will use from that year. The 
February 28 cutoff thus amends another rule, the base year’s 
12-consecutive-month period of claims data, thus meeting the second criteria of 
a rule. See Tex. Gov’t Code 
§ 2001.003(6)(B).
            
Finally, the February 28 cutoff affects the Hospitals’ private rights because it 
is a key formula component that determines prospective reimbursement rates. 
Id. § 
2001.003(6)(C). No definitive test exists for 
determining whether an agency’s statement affects private rights. Although we 
recognize no bright line rule or single test, one approach is to consider 
whether an agency’s “statement” (here the cutoff) has a binding effect on a 
private party. For instance, if the cutoff is merely the agency’s view on an 
issue as found in letters, guidelines, reports or court briefs, and the 
statement has no binding effect on a private party, it is likely nothing more 
than a statement of the agency’s internal policies or procedures. See 
Brinkley v. Tex. Lottery Comm’n, 986 S.W.2d 764, 769-70 
(Tex. App.—Austin 1999, no pet.). However, if the cutoff adopts guidelines, 
practice requirements, or enforcement policies that will have a binding effect 
on private parties, it more likely affects private rights. See Tex. Alcoholic Beverage Comm’n v. 
Amusement & Music Operators of Tex., Inc., 997 S.W.2d 651, 658-59 (Tex. 
App.—Austin 1999, pet. dism. w.o.j.).
            
The enabling statute here requires that HHSC adopt “reasonable rules and 
standards governing the determination of rates paid for inpatient hospital 
services on a prospective payment basis.” Tex. Hum. Res. Code § 32.028(d). Specifically, 
HHSC must “assure that the payment rates are reasonable and adequate to meet the 
costs incurred by the hospital in rendering services to Medicaid recipients.” 
Id. The 
February 28 cutoff is a significant component for calculating prospective 
reimbursement rates, and the Hospitals complain that its effect is to skew those 
rates to their disadvantage. Whether or not this is true it is a matter that the 
agency should explore as a part of its rule-making process.
            
A presumption favors adopting rules of general applicability through the formal 
rule making procedures the APA sets out. Rodriguez v. Serv. Lloyds Ins. Co., 997 S.W.2d 248, 255 (Tex. 1999). These 
procedures include providing notice, publication, and public comment on the 
proposed rule. Id. (citing 
Tex. Gov’t Code §§ 2001.023-.030). The process 
assures notice to the public and affected persons and an opportunity to be heard 
on matters that affect them. Id. 
            
When an agency promulgates a rule without complying with the proper rule-making 
procedures, the rule is invalid. See Tex. Gov’t Code § 2001.035(a). Although we do 
not decide whether the February 28 cutoff is appropriate to the determination of 
whether hospitals receive reasonable and adequate reimbursement for inpatient 
Medicaid services, we do hold that HHSC should have incorporated the cutoff into 
the language of the “base year rule.” See, e.g., 1 
Tex. Admin. Code § 
355.8065(b)(24) (including cutoff in rule pertaining to 
additional reimbursement for disproportionate share hospitals). Because we 
conclude that the February 28 cutoff is a rule, and that HHSC did not follow the 
proper rule-making procedures, we declare the rule invalid. 
            
When a court finds an agency rule invalid, it may remand the rule to the agency 
to allow “reasonable time for the agency to either revise or readopt the rule 
through the established procedures.” Tex. Gov’t Code § 2001.040. Unless good cause 
exists to invalidate the rule, it should remain effective for this reasonable 
period. Id. Finding no good reason to invalidate the rule immediately, we 
remand the rule to the agency for further action.
B
            
The Hospitals also complain that HHSC improperly applied its administrative 
appeals rules. The Hospitals contend that HHSC was required to refer their 
appeal for a formal hearing with the State Office of Administrative 
Hearings.
            
According to the Texas Administrative Code, a hospital may appeal a claim if the 
hospital believes HHSC “made a mechanical, mathematical, or data entry error in 
computing the hospital’s base year claims data,” and “may request a review of 
the disputed calculation by the HHSC . . . .” 1 Tex. Admin. Code § 
355.8063(k)(1)(A). HHSC considers this review an 
“informal review.” See id. If a hospital is dissatisfied with the results 
of the informal review, the hospital may then request a formal hearing before 
the State Office of Administrative Hearings. See id.
            
However, the appeals rule also specifically states that a hospital “may not 
appeal the prospective payment methodology used by the HHSC . . . including: (A) 
the payment division methodologies; (B) the diagnosis-related groups 
established; (C) the methodology for classifying hospital discharges within the 
diagnosis-related groups; (D) the relative weights assigned to the 
diagnosis-related groups; and (E) the amount of payment as being inadequate to 
cover costs. Id. § 355.8063(k)(2). Thus, the appeals rules specifically prohibit any 
appeals contesting HHSC’s prospective payment 
methodology.
            
The court of appeals concluded that “[b]ecause the 
mathematical or data entry errors alluded to by the Hospitals did not pertain to 
individual claims but, rather, to how the claims selection process in the 
aggregate could lead to mathematical or data entry errors, we hold that [HHSC] 
was not required to act on the Hospitals’ requests for formal reviews and . . . 
could properly deny requests for review that challenge the prospective payment 
methodology.” 161 S.W.3d at 594. Thus, because the 
Hospitals’ argument here essentially seeks a formal review of HHSC’s methodology, we agree and, accordingly, affirm that 
part of the court of appeals’ judgment.
* 
* *
            
We affirm the court of appeals’ judgment in part, reverse it in part, and remand 
HHSC’s rule to the trial court for further 
proceedings.
 
 
            
__________________________________________
            
David M. Medina
            
Justice
 
Opinion 
delivered:         August 31, 
2007