**EL PASO HOSPITAL DISTRICT d/b/a R.E. Thomason General Hospital District, et al., Petitioner,**

v.

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION and Don Gilbert, Commissioner, Respondents.**

No. 05–0372.

Supreme Court of Texas.

Argued Nov. 15, 2006.

Decided Feb. 22, 2008.

Marie R. Yeates, Houston, Spikes Kangerga, Julie Plantes Woody, Vinson & Elkins L.L.P., James E. Gjerset, Lance James Ramsey, Shauna L. Lorenz, Gjerset & Lorenz, Austin, TX, for Petitioner.

Robert L. Seibert, Office of Attorney General, Greg Abbott, Attorney General of Texas, Barry Ross McBee, Office of Atty. Gen., Edward D. Burbach, Office of Atty. Gen., Barbara Bryant Deane, Assistant Atty. Gen., Rafael Edward Cruz, Office of Atty. Gen., Rance L. Craft, Kristofer S. Monson, Assistant Solicitor Gen., Kent C. SullivanFirst Asst. Atty. Gen., and David S. Morales, Office of Atty. Gen., Austin, TX, for Respondents.

Ron Beal, pro se.

Justice MEDINA delivered the opinion of the Court.

We grant El Paso Hospital District's motion for rehearing, withdraw our opinion and judgment dated August 31, 2007, and substitute the following in its place.

In this appeal from the denial of a declaratory judgment, we are asked whether the Texas Health and Human Services Commission's (HHSC) data-collection method for calculating prospective Medicaid inpatient service rates is an agency rule as defined by the Administrative Procedures Act (APA). TEX. GOV'T CODE § 2001.003(6). If it is, we are asked to declare the rule invalid because HHSC neglected to adopt it as the APA requires. We are further asked to determine whether HHSC failed to follow the procedure prescribed by other rules that govern an interested party's administrative appeal of HHSC's proposed rates. The trial court denied all relief, and the court of appeals affirmed its judgment. 161 S.W.3d 587.

We conclude that HHSC's data collection method is an invalid rule and remand that part of the case for further proceedings. We further conclude that the Hospitals are entitled to have their excluded data entry claims reviewed. Accordingly, we reverse the court of appeals' judgment.

I

Fourteen Texas hospitals sued HHSC asking that HHSC's cutoff date for submitting paid claims data to determine reimbursement rates for inpatient Medicaid services be declared invalid. The Hospitals claim the cutoff date is improper either because it is an invalid rule under the APA, or because it conflicts with relevant provisions of the Human Resources Code and HHSC's administrative rules. Additionally, the Hospitals assert that HHSC failed to follow its administrative appeals rules in reviewing the Hospitals' claims. A general understanding of the Medicaid program and the process HHSC uses to reimburse for Medicaid services is necessary before addressing these complaints.

Medicaid is a health insurance program, jointly operated and funded by the federal and state governments, for the medical care of low-income and other eligible persons. *See generally* Pub.L. No. 89–97, 79 Stat. 286 (1965) (codified as amended at 42 U.S.C. §§ 1396–1396u); *see also Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (citing 42 U.S.C. § 1396). While federal law establishes Medicaid's basic parameters, each state decides eligible groups, types and range of services, payment levels for services, and administrative services. *See* 42 C.F.R. § 430.0. Specifically, each state prepares a written plan describing the nature and scope of its Medicaid

program. *Id.* § 430. 10. Once the plan is approved by the Secretary of Health and Human Services, the state is responsible for operating the program to conform with the federal guidelines. 42 U.S.C. § 1396. In Texas, HHSC is the agency charged with this responsibility. *See* Tex. Hum. Res.Code §§ 32.028(a)-(d), 32.0281(a).

Under the approved plan, HHSC is responsible for reimbursing hospitals that provide services to Medicaid patients. *See* 42 U.S.C. § 1396a(a)(13). The reimbursement methodology in Texas is a prospective payment system. Tex. Hum. Res.Code § 32.028(d). Under this system, HHSC sets the rates paid to hospitals for each service in advance, which allows hospitals to know the rate at which they will be reimbursed for specific services. *See Wilder,* 496 U.S. at 506, 110 S.Ct. 2510. The prospective payment system encourages hospitals to control costs for inpatient Medicaid services so they can earn a profit under the pre-determined rates. *Id.* at 506–07.

To implement this system, HHSC has adopted specific rules to determine the prospective payment rates. Although the rate-calculation rules are detailed and complex, they generally involve three components: (1) the data that forms the basis for the rate calculation, (2) the formula that converts the data into reimbursement rates, and (3) the process HHSC uses to collect the data and calculate rates.

The first component, the data used for the rate calculation, is comprised of both cost and claims data. *See* 1 Tex. Admin. Code § 355.8063(c). Cost data are derived from the hospitals' cost reports that allocate a portion of their total costs to the Medicaid program based on how many days Medicaid patients stay in the hospital, charges associated with such patients, and other factors. *See id.* § 355.8063(*l*). Claims data are derived from hospital claims requesting payment for services rendered to Medicaid patients under existing reimbursement rates. *Id.* § 355.8063(b)(5).

The second component, the rate-calculation formula, converts the cost and claims data into reimbursement rates that approximate a hospital's cost for treating a Medicaid patient. The formula achieves this goal by taking a group of hospitals with similar Medicaid cost experiences, deriving those hospitals' approximate costs to treat an average Medicaid case, then adjusting that cost to reflect the relative expense of a particular service. *Id.* § 355.8063(e). The result is the new rate to be paid to that hospital group for that service. *See id.* Specifically, the rate for a service is determined by multiplying (1) the relative weight of the patient's diagnosis-related group by (2) the standard dollar amount for the hospital's payment division. *Id.* Although several steps are involved in calculating the diagnosis-related groups and standard dollar amounts, the foundation for the calculations, and what is important for purposes of this appeal, is the "base year" that we will later discuss in more detail. *Id.* § 355.8063(b)(5).

The third component for determining prospective rates for Medicaid services is HHSC's process for collecting the data. This process requires that the prospective reimbursement rates be recalculated at least every three years to account for inflation and medical advances that affect the cost of medical services. *See id.* HHSC's current policy is to recalculate the rates on a three-year cycle. *See id.* The first year is the base year, and only claims data from Medicaid patients admitted in this base year may be included in the rate calculation. *See id.* § 355.8063(n). The next year, HHSC collects the data and converts it into prospective reimbursement rates. *See id.* These rates then go into effect in

the third year and remain effective for three years during which this process is repeated. *See id.* During the third year, HHSC makes changes only if a hospital successfully appeals a mathematical or data entry error. *Id.* § 355.8063(k)(1). For example, the base year at issue here was the state fiscal year from September 1, 1999, to August, 31, 2000. The process for collecting data and generating rates occurred between September 1, 2000, and August 31, 2001. These rates were in effect from September 1, 2001, through August 31, 2004.

This appeal focuses on HHSC's interpretation of what constitutes a "base year." HHSC's rules define the "base year" as "[a] 12–consecutive–month period of claims data selected by the [department] or its designee." *Id.* § 355.8063(b)(5). HHSC requires that the "12–consecutive–month period" run concurrently with the State's fiscal year from September 1 to August 31. *See id.* § 355.8063(n). HHSC gathers all claims data for Medicaid patients admitted during that fiscal year but uses only the claims that Medicaid actually pays to assure that the data is from Medicaid-eligible claimants. Most importantly to this appeal, HHSC imposes a "cutoff" date, selecting claims data only from base-year claims that are paid within the fiscal year plus a six-month grace period (the "February 28 cutoff"). Put simply, when determining what claims go into the rate calculation, HHSC considers only the claims of Medicaid patients admitted during the base year that are actually paid within six months of the base-year's end. Claims for all patients admitted during the base year, but not paid by February 28, are not included in determining the prospective reimbursement rates. Between February 28 and August 31, HHSC recalculates the standard dollar amount and diagnosis-related group relative weights, informs hospitals of the proposed new rates, hears appeals, and finalizes the new rates before they go into effect on September 1 of that year.

The problem with this process, according to the Hospitals, is that HHSC does not use twelve consecutive months of claims data in computing rates as its rules require. Instead, the Hospitals argue that HHSC's six-month cutoff arbitrarily excludes relevant Medicaid claims simply because they are not paid quickly enough. The Hospitals submit that under HHSC's interpretation of the rule, only 95–97 percent of base-year claims are used to calculate the rates, while the rules actually require a "true cost average."

Dissatisfied with this process, the Hospitals sought administrative review of the reimbursement rates from fiscal year 2000, asking HHSC to include claims data excluded by the February 28 cutoff. HHSC denied the Hospitals' request and refused to refer the case to the State Office of Administrative Hearings for a formal hearing. The Hospitals then sued HHSC for declaratory and injunctive relief to enjoin it from applying the February 28th cutoff. The Administrative Procedures Act authorizes declaratory relief when determining the validity or applicability of a rule, if the plaintiff alleges "that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a).

The trial court granted the Hospitals' request for a temporary injunction, but, at a subsequent trial on the merits, a visiting judge ruled against the Hospitals on all claims. The court of appeals affirmed, 161 S.W.3d 587, and this appeal followed.

II

The Hospitals present two arguments on appeal. First, they ask that we declare

the February 28 cutoff invalid either because it constitutes an improperly promulgated rule or because it conflicts with the applicable provisions of the Texas Human Resources Code and the Texas Administrative Code. *See generally* TEX. HUM. RES. CODE § 32.028(d); 1 TEX. ADMIN. CODE § 355.8063. Second, the Hospitals argue that HHSC failed to refer their administrative appeal relating to the rate issue for formal hearing, as required by HHSC's rules and the Texas Human Resources Code. They ask that we either direct HHSC to refer their appeal or remand the case for further proceedings.

A

■ HHSC is charged with establishing methods for administering and adopting necessary rules for the proper and efficient operation of medical assistance programs. TEX. HUM. RES.CODE § 32.021(c). Specifically, HHSC has statutory authority to adopt "reasonable rules and standards governing the determination of rates paid for inpatient hospital services on a prospective payment basis." *Id.* § 32.028(d). HHSC also has authority to adopt rules relating to the payment rates that describe the process used to determine the rates. *Id.* § 32.0281(b). HHSC further must describe the prospective payment system used to reimburse hospitals that provide inpatient Medicaid services. *See* 1 TEX. ADMIN. CODE § 355.8063(a).

HHSC argues that it complied with these statutes, and that the February 28 cutoff is not a rule itself, but rather its interpretation of the base-year rule. The Hospitals disagree, arguing the February 28 cutoff falls squarely within the APA's definition of a rule. We agree with the Hospitals. Under the APA, a rule: (1) is an agency statement of general applicability that either "implements, interprets, or prescribes law or policy" or describes

[HHSC's] "procedure or practice requirements;" (2) "includes the amendment or repeal of a prior rule;" and (3) "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." TEX. GOV'T CODE § 2001.003(6)(A)-(C).

■ First, the February 28 cutoff is a statement of general applicability that implements law or describes procedure. *See id.* § 2001.003(6)(A)(i)-(ii). The term "general applicability" under the APA references "statements that affect the interest of the public at large such that they cannot be given the effect of law without public input." *R.R. Comm'n of Tex. v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex.2003). The prospective payment system and its calculations affect all hospitals receiving reimbursement for inpatient Medicaid services. Thus, no question exists that the February 28 cutoff is a statement of general applicability because it applies to all hospitals.

The cutoff further implements policy and describes HHSC's data collection procedure. HHSC is required to describe the process used to determine payment rates through its formally promulgated rules, and HHSC's rule provides that it will use a base year, "[a] 12–consecutive–month period of claims data," to calculate the Hospitals' rates. 1 TEX. ADMIN. CODE § 355.8063(b)(5). The effect of HHSC's February 28 cutoff, however, is to modify the base-year rule by controlling the data HHSC will use from that year. The February 28 cutoff thus amends another rule, the base year's 12–consecutive–month period of claims data, thus meeting the second criteria of a rule. *See* TEX. GOV'T CODE § 2001.003(6)(B).

Finally, the February 28 cutoff is not a statement regarding the agency's internal management or organization but rather af-

fects the Hospitals' private rights. Hospitals are entitled to have their prospective reimbursement rates determined according to the formula set out in HHSC's rules. The February 28 cutoff is a key component of that formula, directly affecting the Hospitals' right to reimbursement, but was not adopted through proper rule-making procedures. *Id.* § 2001.003(6)(C).

The enabling statute here requires that HHSC adopt "reasonable rules and standards governing the determination of rates paid for inpatient hospital services on a prospective payment basis." TEX. HUM. RES.CODE § 32.028(d). Specifically, HHSC must "assure that the payment rates are reasonable and adequate to meet the costs incurred by the hospital in rendering services to Medicaid recipients." *Id.* § 32.028(d)(1). The February 28 cutoff is a significant component for calculating prospective reimbursement rates, and the Hospitals complain that its effect is to skew those rates to their disadvantage. Whether or not this is true, it is a matter that the agency should explore as a part of its rule-making process.

■ A presumption favors adopting rules of general applicability through the formal rule-making procedures the APA sets out. *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 255 (Tex.1999). These procedures include providing notice, publication, and public comment on the proposed rule. *Id.* (citing TEX. GOV'T CODE §§ 2001.023–.030). The process assures notice to the public and affected persons and an opportunity to be heard on matters that affect them. *Id.*

■ When an agency promulgates a rule without complying with the proper rule-making procedures, the rule is invalid. *See* TEX. GOV'T CODE § 2001.035(a). Although we do not decide whether the February 28 cutoff is appropriate to the determination of whether hospitals receive reasonable and adequate reimbursement for inpatient Medicaid services, we do hold that HHSC should have incorporated the cutoff into the language of the "base-year rule." *See, e.g.,* 1 TEX. ADMIN. CODE § 355.8065(b)(24) (including cutoff in rule pertaining to additional reimbursement for disproportionate share hospitals). Because we conclude that the February 28th cutoff is a rule that HHSC did not properly promulgate, we reverse the court of appeals' judgment and render judgment declaring the rule invalid and enjoining its enforcement. *See* TEX. GOV'T CODE § 2001.035.

## B

■ The Hospitals also complain that HHSC improperly applied its administrative appeals rules. The Hospitals contend that HHSC was required to refer their appeal for a formal hearing with the State Office of Administrative Hearings.

According to the Texas Administrative Code, a hospital may appeal a claim if the hospital believes HHSC "made a mechanical, mathematical, or data entry error in computing the hospital's base year claims data," and "may request a review of the disputed calculation by the HHSC...." 1 TEX. ADMIN. CODE § 355.8063(k)(1)(A). HHSC considers this review an "informal review." *See id.* If a hospital is dissatisfied with the results of the informal review, the hospital may then request a formal hearing before the State Office of Administrative Hearings. *See id.*

However, the appeals rule also specifically states that "[a] hospital may not appeal the prospective payment methodology used by the HHSC ... including: (A) the payment division methodologies; (B) the [diagnosis-related groups] established; (C) the methodology for classifying hospital discharges within the [diagnosis-related

716

groups]; (D) the relative weights assigned to the [diagnosis-related groups]; and (E) the amount of payment as being inadequate to cover costs." *Id.* § 355.8063(k)(2). Thus, the appeals rules specifically prohibit any appeals contesting HHSC's prospective payment methodology.

The court of appeals concluded that HHSC was not required to grant a formal review "[b]ecause the mathematical or data entry errors alluded to by the Hospitals did not pertain to individual claims but, rather, to how the claims selection process in the aggregate could lead to mathematical or data entry errors." 161 S.W.3d at 594. Because the February 28 cutoff is invalid, however, the Hospitals' administrative appeals do not question HHSC's payment methodology but rather the omission of individual claims. Applying the base-year rule without the February 28 cutoff, the only issue is whether HHSC has included all the claims arising during the twelve-month base-year period. *See* Tex. Admin. Code §§ 355.8063(b)(5), (n). This inquiry involves a reviewable "data entry" claim. *See id.* § 355.8063(k)(1). Thus, we conclude that the Hospitals were entitled to a review of individual claims data excluded by the February 28 cutoff.

\* \* \*

We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.