# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-12-00560-CV

**The Texas State Board of Pharmacy, and in their official capacities only, Gay Dodson, Executive Director; and Jeanne D. Waggener, President of the Board, Appellants**

**v.**

**Tiana Jean Witcher, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-12-000026, HONORABLE TIM SULAK, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

I withdraw my dissenting opinion dated May 3, 2013, and substitute the following in its place.

The only issue in this appeal is the sanction imposed against appellee Tiana Jean Witcher by the Texas State Board of Pharmacy. The Board's sanction against Witcher—suspending her Texas pharmacy license—was within the statutory range of punishment and consistent with past precedent and expressed policy concerns. Nonetheless, the majority concludes that the Board imposed the sanction based upon an invalid rule—a binding "reciprocal-sanctions policy." Because the record supports that the Board did not have a binding policy and that it properly considered the facts and circumstances of this case, I respectfully dissent.

Section 2001.003(6) of the Government Code defines a rule to mean a "state agency statement of general applicability." Tex. Gov't Code § 2001.003(6). As the majority recognizes, for an agency statement to be a rule, it must "bind the agency or otherwise represent its authoritative position in matters that impact personal rights." *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 703 (Tex. App.—Austin 2011, no pet.); *see Slay v. Texas Comm'n on Envtl. Quality*, 351 S.W.3d 532, 546 (Tex. App.—Austin 2011, pet. denied) (noting that "core concept [of rule] is that the agency statement must in itself have a binding effect on private parties").

The majority concludes that the Board's "unwritten policy that a pharmacist with an active suspension in another state cannot practice pharmacy in Texas" was an invalid rule. The majority focuses on testimony by the Board's director of enforcement at the contested case hearing and the Board's statements in its order concerning policy reasons for imposing a reciprocal sanction against Witcher. At the hearing, the director relied upon a prior order in which the Board imposed a reciprocal sanction of suspension based upon the disciplinary action by another state's board of pharmacy. *See In re Nealy*, Bd. Order #N-03-005, SOAH Docket No. 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 (2005). In *Nealy*, the Board noted that, "[i]n previous cases with similar facts, the Board has typically imposed disciplinary action mirroring the action by another state board of pharmacy." But the fact that the Board has "typically imposed" a mirror sanction when faced with disciplinary action by another state board does not foreclose the Board from imposing a different sanction within its discretion depending on the facts and circumstances of a particular case. *See Slay*, 351 S.W.3d at 546.

In the context of an agency's written policy "setting forth an elaborate methodology for applying statutory criteria" to determine administrative penalties, this Court has explained the

2

difference between a non-binding guideline and a rule.  *Id.* at 538.  In that case, we concluded that the district court did not err in determining that the "Penalty Policy" at issue was not a rule.  *Id*. at 548.  We explained:  "[W]hat ultimately matters is that the district court also had evidence to the effect that the [agency] commissioners were not *bound* to follow the Penalty Policy's methodology when exercising their legislatively conferred discretion to impose penalties." *Id.* at 546 (emphasis in original); *see also Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 443 (Tex. 1994) ("Not every statement by an administrative agency is a rule."); *Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 555 (Tex. App.—Austin 2008, pet. denied) (noting it is "well-established that not every administrative pronouncement is a rule"); *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 769 (Tex. App.—Austin 1999, no pet.) (observing that agencies routinely issue documents such as guidelines "which might contain statements that intrinsically implement, interpret, or prescribe law, policy, or procedure or practice requirements" that are not rules).

Here, the district court had evidence that the Board was not bound to impose a sanction of suspension.  The Board's own conduct demonstrated that it was not bound to apply a reciprocal sanction but that it did so within its discretion and consistent with prior decisions addressing similar facts.  *See* Tex. Occ. Code § 565.051(1) (board "may" "suspend the person's license"); 22 Tex. Admin. Code § 281.60 (2012) (Texas State Bd. of Pharmacy, General Guidance)[1];

[1] Section 281.60 states in relevant part:

(a)     This subchapter is promulgated to:

    (1)     promote *consistency* and guidance in the exercise of the sound discretion by the agency in licensure and disciplinary matters; . . .

3

*Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 754, 757 (Tex. App.—Austin 2006, pet. denied) (noting that "[p]olicy considerations . . . are the reason that the Commission is granted discretion over what penalties should be imposed for racing violations" and upholding penalty that "followed its guidelines" and "decade of precedent"); *see also Austin Chevrolet, Inc. v. Motor Vehicle Bd.*, 212 S.W.3d 425, 438 (Tex. App.—Austin 2006, pet. denied) (noting that "a licensing authority acts arbitrarily and unlawfully if it treats similarly situated applicants differently without an articulated justification"). The sole purpose of the contested case hearing was to determine the appropriate sanction. It was undisputed that Witcher's license was suspended in North Carolina, and she did not challenge the process or procedure in North Carolina that resulted in the suspension. If the board was "*duty-bound*" to suspend Witcher's license because her North Carolina license was suspended, as the majority suggests, why have the hearing? Why admit evidence at the hearing concerning the facts and circumstances of Witcher's particular case?

The Board's conclusions of law recognized that it did not have a binding policy that dictated the sanction of suspension against Witcher. The Board concluded that it "[did] not have a written policy or rule requiring that a pharmacist be prevented from practicing in Texas until the

---

(b)     Board's role. The board shall render the final decision in a contested case and has the responsibility to assess sanctions against licensees who are found to have violated the Act. . . . *A sanction should be consistent with sanctions imposed in other similar cases* and should reflect the board's determination of the seriousness of the violation and the sanction required to deter future violations. A determination of the appropriate sanction is reserved to the board. . . .

22 Tex. Admin. Code § 281.60 (2012) (Texas State Bd. of Pharmacy, General Guidance) (emphasis added).

pharmacist resolves restrictions on her license in another state." Similarly, at the open meeting where the Administrative Law Judge's proposal for decision was considered, the Board's representative stated:

> There is not a policy that requires you to suspend when somebody is suspended in another state. However, suspension is an option. And so what you have to do is look at the facts - - the findings of fact in this case and decide based upon everything that the Judge found, based upon her impairment, based on her management of that impairment, based upon her status in North Carolina what of your disciplinary options do you think is the appropriate option. And I've given you the arguments why I believe that it should be suspension and why we should look at what the other state did. But, no, there's not a policy that requires you to suspend and that's not what I'm asserting; but there is no need to have a policy on the flip side. It's not required that you have a policy that says what you do in these situations.

In contrast to the majority's conclusion that the Board's "reciprocal-sanctions policy" was a "bright-line rule that is applicable without regard to individual circumstances," the Board's representative made clear to the Board that the appropriate sanction for Witcher was within the Board's discretion— not a foregone conclusion—and then argued for suspension based upon policy reasons.[2] *See Fay-Ray Corp. v. Texas Alcoholic Beverage Comm'n*, 959 S.W.2d 362, 369 (Tex. App.—Austin 1998, no pet.) (upholding revocation of permit and noting that "an agency has broad discretion in determining which sanction best serves the statutory policies committed to the agency's oversight");

---

[2] For example, had there been evidence that Witcher was not afforded due process in the North Carolina proceeding, the Board, considering the facts and circumstances of Witcher's case, might have imposed a different sanction within its discretion. *See In re Nealy*, Order #N-03-005, SOAH Docket No. 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 (2005) (recognizing that evidence of "whether a pharmacist has not been afforded due process in the other state" relevant to policy determination in context of appropriate sanction based on sanction imposed by another state board of pharmacy).

*Sears v. Texas State Bd. of Dental Exam'rs*, 759 S.W.2d 748, 751 (Tex. App.—Austin 1988, no writ) ("[T]he choice of penalty is vested in the agency, not in the courts.").

Further, unlike the agency statements that were found to be rules in the cases cited by the majority, the agency statements at issue here were made during contested case hearings in the context of determining the appropriate sanction against an individual. *Compare El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 711–12 (Tex. 2008) (concluding that agency's "data-collection method for calculating prospective Medicaid inpatient service rates" was rule in suit for declaratory relief); *Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 715 (Tex. App.—Austin 2009, no pet.) (concluding legal interpretations in letters sent by Comptroller were rules in suit for declaratory and injunctive relief), *with Railroad Comm'n of Tex. v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 70, 79 (Tex. 2003) (concluding that "field rules" were not rules of "general applicability" and noting that APA definition of rule "does not reference statements made in determining individual rights").

Because I would conclude that the Board did not act based upon an invalid rule and that it considered the facts and circumstances of Witcher's case and then acted well within its discretion to impose the sanction of license suspension, I would affirm the order of the Board and reverse the trial court's judgment.[3]

---

[3] I also disagree with the majority's suggestion that, even if the Board's decision was not based upon an invalid rule, that its decision would be arbitrary and capricious. According to her own testimony, Witcher had no plans to return to North Carolina to practice pharmacy in North Carolina, or otherwise clear the North Carolina suspension because of lack of financial resources. I question whether a licensing board would be acting arbitrarily or capriciously by refusing to excuse compliance with another state's unchallenged sanction based upon the licensee's lack of financial resources.

As to the majority's supplemental opinion, I would not address issues and arguments raised by the Board for the first time in its motion for rehearing, except as to the individual appellants' assertion of immunity from suit. *See Wells Fargo Bank, N.A. v. Leath*, 425 S.W.3d 525, 540 (Tex. App.—Dallas 2014, pet. filed) (supp. op. on reh'g) (concluding issue raised for first time on rehearing not before the court and declining to address it); *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 676 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (supp. op. on reh'g) (same); *see also OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 747 (Tex. App.—Dallas 2007, pet. denied) (op. on reh'g) ("A motion for rehearing does not afford a party an opportunity to raise new issues after the case has been briefed, argued, and decided on other grounds, unless the error is fundamental.").

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Filed:   October 31, 2014

7