# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00802-CV

Southwest Pharmacy Solutions, Inc. d/b/a American Pharmacies, Appellant

v.

Texas Health and Human Services Commission; and Kyle Janek,
solely in his Official Capacity as Executive Commissioner of the
Texas Health and Human Services Commission,[1] Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-11-002612, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Southwest Pharmacy Solutions, Inc., d/b/a American Pharmacies appeals from a final judgment dismissing, on pleas to the jurisdiction, claims it asserted against the Texas Health and Human Services Commission (HHSC) and its executive commissioner, in his official capacity.[2] The pleas to the jurisdiction asserted sovereign immunity, and that doctrine is likewise the focus of American Pharmacies' issues on appeal. In three issues, American Pharmacies contends that the district court erred in granting the pleas because American Pharmacies' claims against HHSC and its executive commissioner invoked the court's subject-matter jurisdiction through either the waiver

---

[1]  The notice of appeal and prior filings in the district court reference HHSC's former executive commissioner, Thomas Suehs, who has since retired. Accordingly, HHSC's current executive commissioner, Dr. Kyle Janek, has been substituted. *See* Tex. R. App. P. 7.2(a).

[2]  HHSC's executive commissioner is the agency's chief executive officer. *See* Tex. Health & Safety Code § 11.012(e).

of immunity contained in section 2001.038 of the Administrative Procedure Act (APA)[3] or the

*ultra vires* exception to sovereign immunity, *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 372

(Tex. 2009) (describing *ultra vires* exception to sovereign immunity). We disagree and will affirm

the district court's judgment.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges a trial court's authority to decide the subject

matter of a specific cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d

217, 225–26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's

live pleadings. *Id*. at 226. The plaintiff has the initial burden of alleging facts that affirmatively

demonstrate the trial court's jurisdiction to hear the cause. *Id*. (citing *Texas Ass'n of Bus. v. Texas

Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We take the pleaded facts as true in the first

instance and liberally construe them with an eye to the pleader's intent. *See id*. However, mere

unsupported legal conclusions do not suffice. *See Creedmoor–Maha Water Supply Corp. v. Texas

Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515–16 & nn.7–8 (Tex. App.—Austin 2010, no pet.).

We must also consider evidence the parties presented below that is relevant to the jurisdictional

issues, including evidence that a party has presented to negate the existence of facts alleged

in the plaintiff's pleading. *See Miranda*, 133 S.W.3d at 227; *Bland Indep. Sch. Dist. v. Blue*,

34 S.W.3d 547, 555 (Tex. 2000); *see also Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712,

719 (Tex. App.—Austin 2009, no pet.) (summarizing different standards governing evidentiary

---

[3] *See* Tex. Gov't Code § 2001.038 (allowing declaratory action against State to determine validity or applicability of a rule); *see generally id.* §§ 2001.001–.902 ( APA provisions).

challenges to the existence of pleaded jurisdictional facts where such facts implicate both jurisdiction and the merits versus where they implicate only jurisdiction); *City of New Braunfels v. Stop the Ordinances Please*, No. 03-12-00528-CV, 2013 WL 692446, at * 5 n.9 (Tex. App.—Austin Feb. 21, 2013, no pet.) (noting that, in the absence of sufficient pleading allegations, courts may review the entire record to determine if evidence establishes subject-matter jurisdiction (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446)). The ultimate question of whether particular facts affirmatively demonstrate a claim within the trial court's jurisdiction is one of law that we review de novo. *See Miranda*, 133 S.W.3d at 226; *Creedmoor–Maha*, 307 S.W.3d at 513, 516 n.8.

Both sides presented evidence below in support or opposition to appellees' pleas to the jurisdiction. However, the facts material to our disposition of American Pharmacies' appellate issues are largely undisputed. Our analysis ultimately turns on the legal import of these facts in light of various statutory duties and requirements applicable to HHSC. Statutory construction is a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the Legislature's intent. *Id*. We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651–52 (Tex. 2006)). We give such statutes their plain meaning without resort to rules of construction or extrinsic aids. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635, 637 (Tex. 2010).

**THE RECORD**

The pleadings and undisputed evidence reflect that American Pharmacies' claims arise in the context of a broader policy debate regarding the provision of prescription-drug benefits under the Medicaid program in Texas. The Medicaid program is a joint federal-state entitlement program, created by Title XIX of the Social Security Act, that pays for medical services on behalf of certain groups of low-income persons. *See El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 711 (Tex. 2008) (citing Pub. L. No. 89–97, 79 Stat. 286 (1965) (codified as amended at 42 U.S.C. §§ 1396–1396u); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 502 (1990) (citing 42 U.S.C. § 1396)). A state's participation in Medicaid is optional, although the federal government provides substantial matching funds for those who do, *see Wilder*, 496 U.S. at 502, and Texas has participated since 1967, *see Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 256 (Tex. 2002).

To obtain federal matching funds for its Medicaid program, a state must provide certain benefits specified in the Social Security Act—e.g., inpatient hospital and physician services, *see* 42 U.S.C. §§ 1396a(a)(10), 1396d(a)(1)–(5), (17), (21)—but it makes the provision of certain other medical services optional—e.g., optometry services, chiropractic services, counseling and, of significance here, a prescription-drug benefit, *see id*. §§ 1396a(a)(10)(A), 1396d(a). States are also afforded some flexibility in establishing eligible groups, types and range of services, payment levels for services, and administrative services. *See El Paso Hosp.*, 247 S.W.3d at 711 (citing 42 C.F.R. § 430.0). Procedurally, a state must prepare a written "plan" describing the nature and scope of its Medicaid program. *See id*. Assuming the plan is approved by the Secretary of Health and

4

Human Services (specifically, by a delegee known as the Center for Medicaid Services (CMS)), the state is responsible for operating the program to conform with the federal guidelines. *Id.* (citing 42 U.S.C. § 1396). Additionally, a state may seek federal approval to deviate from the basic federal requirements, or to provide services beyond them, through what are known as "Section 1115 Waivers." *See* 42 U.S.C. § 1315(a)(1) (authorizing waiver of state plan requirements for experimental, pilot, or demonstration projects).[4] These waivers allow states to experiment with methods of delivering benefits to beneficiaries to improve the Medicaid system. *See* Judith M. Rosenberg and David T. Zaring, *Managing Medicaid Waivers: Section 1115 and State Health Care Reform*, 32 Harv. J. on Legisl. 545, 547 (1995) (discussing purposes of and procedure for obtaining 1115 waivers). In Texas, HHSC is the state agency charged with operating, administering, and supervising Texas's Medicaid program. *See* Tex. Gov't Code § 531.021(a); Tex. Hum. Res. Code § 32.021(a); *El Paso*, 247 S.W.3d at 711.

Similar to private health insurance, the Texas Medicaid program compensates health-care providers—e.g., doctors, nurses, dentists, hospitals, and nursing homes—for services they provide to Medicaid recipients. In its inception, the Texas Medicaid program compensated providers under a fee-for-services system under which providers were paid a sum for each unit of service they provided to Medicaid recipients. Since 1991, however, the Legislature and HHSC have moved increasingly to a "managed care" model for delivering services and compensating providers.[5] Under

---

[4] The designation "1115" is a reference to the section of the legislation that created the waiver in the Social Security Act. *See* Public Welfare Amendments of 1962, Pub. L. No. 87-43, title XI, § 1115, 76 Stat. 173, 192 (1962) (codified as amended at 42 U.S.C. § 1315).

[5] *See* Act of Aug. 9, 1991, 72d Leg., 1st C.S., ch. 15, § 5.02, 1991 Tex. Gen. Laws 281 (creating a managed-care pilot program).

Medicaid managed care, simply described, HHSC contracts with third parties, known as managed care organizations (MCOs), to administer a "managed care plan" whereby recipients can obtain services from a "network" of health-care providers who have contracted with the MCO or its agents to provide services to them.[6] HHSC pays MCOs capped or capitated rates based on the number of recipients who have enrolled in the "plan." The MCOs or their agents, in turn, contract with health-care providers to serve patients enrolled in the plan, sometimes at what providers perceive to be dramatically discounted rates—a sort of trade-off for market access—and exercise a degree of control over the nature and extent of utilization and compensation of services.

An impetus for Texas's movement to Medicaid managed care has been the perception—both in the Legislature and at HHSC—that managed care yields cost savings and other benefits that make it preferable to a fee-for-service regime. In fact, the Legislature has periodically mandated that HHSC adopt or expand Medicaid managed care in order to reduce the costs of the program.[7] Since 2004, HHSC has provided medical services to Medicaid patients through a managed care program known as "STAR"—"State of Texas Access Reform"—which was established in response to legislative mandate and receives federal matching funds pursuant to

---

[6] An MCO is an organization authorized to arrange for or provide a managed care plan. Tex. Gov't Code § 533.001(4). A managed care plan, in turn, is a plan that provides, arranges for, pays for, or reimburses the cost of health-care services. *Id.* § 533.001(5).

[7] *See, e.g.*, Act of May 23, 1995, 74th Leg., R.S., ch. 444, §§ 1–7, 1995 Tex. Gen. Laws 3129; Act of May 16, 1997, 75th Leg., R.S., ch. 501, §§ 1.01–3.04, 1997 Tex. Gen. Laws 1834; Act of May 18, 1997, 75th Leg., R.S., ch. 618, §§ 1–2, 1997 Tex. Gen. Laws 2154; Act of May 18, 1997, 75th Leg., R.S., ch. 692, §§ 1–4, 1997 Tex. Gen. Laws 2313; Act of May 28, 1997, 75th Leg., R.S., ch. 1262, §§ 1–4, 1997 Tex. Gen. Laws 4780; Act of June 2, 2003, 78th Leg., R.S., ch. 198, §§ 1.01–2.218, 2003 Tex. Gen. Laws 611.

a 1115 waiver. *See Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 706, 714 (Tex. App.—Austin 2007, pet. denied).

Since 1971, the Texas Medicaid program has included a prescription drug benefit. Until recently, this program benefit had been "carved out" of the managed care system, with HHSC continuing to pay pharmacies furnishing Medicaid prescription drugs on a fee-for-services basis through the "Vendor Drug Program." *See Texas Health & Human Servs. Comm'n v. Healthtec Med.*, SOAH Docket No. 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, 2001 WL 35742383, at *1 (Tex. St. Off. Admin. Hgs., Nov. 19, 2001). However, faced with significant state budgetary challenges in 2011, the 82nd Texas Legislature, citing millions in anticipated cost savings, mandated that HHSC again expand the Medicaid managed care system by, among other things, incorporating prescription drug benefits into that system. *See* Act of June 27, 2011, 82d Leg., 1st C.S., ch. 7, § 1.02(d), 2011 Tex. Gen. Laws 5390, 5393 (S.B. 7) (codified at Tex. Gov't Code § 533.005(a)(23)).[8]

---

[8] The Legislature required, in relevant part, that

. . .

(23) . . . [a] contract between a managed care organization and the commission for the organization to provide health care services to recipients must contain:

. . . a requirement that the managed care organization develop, implement, and maintain an outpatient pharmacy benefit plan for its enrolled recipients:

    (A)    that exclusively employs the vendor drug program formulary and preserves the state's ability to reduce waste, fraud, and abuse under the Medicaid program;

    (B)    that adheres to the applicable preferred drug list adopted by the commission under Section 531.072;

7

(C)     that includes the prior authorization procedures and requirements prescribed by or implemented under Sections 531.073(b), (c), and (g) for the vendor drug program;

(D)     for purposes of which the managed care organization:

   (I)     may not negotiate or collect rebates associated with pharmacy products on the vendor drug program formulary; and

   (ii)    may not receive drug rebate or pricing information that is confidential under Section 531.071;

(E)     that complies with the prohibition under Section 531.089;

(F)     under which the managed care organization may not prohibit, limit, or interfere with a recipient's selection of a pharmacy or pharmacist of the recipient's choice for the provision of pharmaceutical services under the plan through the imposition of different copayments;

(G)     that allows the managed care organization or any subcontracted pharmacy benefit manager to contract with a pharmacist or pharmacy providers separately for specialty pharmacy services, except that:

   (i)     the managed care organization and pharmacy benefit manager are prohibited from allowing exclusive contracts with a specialty pharmacy owned wholly or partly by the pharmacy benefit manager responsible for the administration of the pharmacy benefit program; and

   (ii)    the managed care organization and pharmacy benefit manager must adopt policies and procedures for reclassifying prescription drugs from retail to specialty drugs, and those policies and procedures must be consistent with rules adopted by the executive commissioner and include notice to network pharmacy providers from the managed care organization;

(H)     under which the managed care organization may not prevent a pharmacy or pharmacist from participating as a provider if the pharmacy or pharmacist agrees to comply with the financial terms and conditions of

Under the new regime, each MCO contracting with the state to provide Medicaid services would contract with a pharmacy benefit manager (PBM), which would in turn contract with pharmacies to actually dispense medication to MCO clients and pay them for those services. *See id.*

S.B. 7 was passed by the Legislature on June 28, 2011, signed by the Governor on July 19, 2011, and took effect on September 28, 2011. *Id.* To implement the expansion of Medicaid managed care mandated by S.B. 7, HHSC undertook a number of measures that included applying for and ultimately obtaining the federal 1115 waiver necessary to secure matching funds for the expansion, promulgating rules, and procuring contracts with MCOs to provide STAR services that included the prescription drug benefit. Although HHSC did not receive the federal 1115 waiver until December 2011, and its new rules (and the pharmacy benefit carve-in) did not take full effect until March 1, 2012,[9] it is undisputed that HHSC had begun taking steps toward "carving-in" pharmacy

the contract as well as other reasonable administrative and professional terms and conditions of the contract;

(I) under which the managed care organization may include mail-order pharmacies in its networks, but may not require enrolled recipients to use those pharmacies, and may not charge an enrolled recipient who opts to use this service a fee, including postage and handling fees; and

(J) under which the managed care organization or pharmacy benefit manager, as applicable, must pay claims in accordance with Section 843.339, Insurance Code; . . .

Tex. Gov't Code § 533.005(a)(23).

[9] These rules are the subject of a second suit and subsequent appeal brought by American Pharmacies that is pending before this Court in Cause No. 03-12-00293-CV, *Southwest Pharmacy Solutions, Inc. v. Texas Health & Human Servs. Comm'n, et al*. Although the federal waiver and HHSC's subsequent steps to implement S.B. 7's Medicaid expansion are not contained in the record of the present appeal, as these events took place after the judgment being challenged, we take judicial notice of these background facts from our record in the subsequent appeal. *See* Tex. R. Evid. 201(c);

benefits into Medicaid managed care prior to the September 28, 2011 effective date of S.B. 7.  Of

relevance to this appeal:

•    Beginning in late 2010, HHSC initiated preliminary discussions with the federal government concerning a potential waiver expanding Medicaid managed care.

•    On July 13, 2011, a few days before the Legislature passed S.B. 7, HHSC formally applied for the federal waiver.  Relatedly, HHSC published notice of its intent to seek the waiver in May 2011, with subsequent amendments to the notice in late August and early September.[10]

•    In November 2010, HHSC released a draft request for proposal (RFP#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) to procure MCO contracts to provide STAR services, including the prescription drug benefit.  After receiving comments, HHSC released RFP#529-12-002 on April 8, 2011, with proposals due on May 23, 2011.  In the interim, HHSC conducted an April 18 "vendor conference," elicited questions from MCOs, and posted responses.

•    On August 1, 2011, HHSC announced tentative contract awards under RFP#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 to 16 MCOs in 13 service areas covering the entire state.  Subsequently, on August 31, HHSC announced tentative contract awards to two additional MCOs in the Travis County service area.

Also of relevance are actions taken by MCOs and PBMs following HHSC's tentative contract

awards on August 1, 2011.  During the ensuing month, PBMs subcontracting with MCOs began

soliciting pharmacies to join their provider networks.  On August 9, one of the PBMs, Navitus, wrote

various pharmacies to solicit enrollment and gave them a deadline of August 31, 2011, to enroll.

_Cognata v. Down Hole Injection, Inc._, 375 S.W.3d 370, 379 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("A court may take judicial notice of its own records and prior pleadings, with or without the request of a party." (citing Tex. R. Evid. 201(c))).

[10]  _See_ 36 Tex. Reg. 3223, 3354–59 (May 27, 2011); 36 Tex. Reg. 5247, 5455–5460 (Aug. 26, 2011); 36 Tex. Reg. 5523, 5733–39 (Sept. 2, 2011).  HHSC was required by statute to "publish notice in the Texas Register of . . . any attempt to obtain a waiver of federal regulations in the medical assistance [i.e., Medicaid] program," to provide information upon request, and to provide a contact person to that end.  Tex. Hum. Res. Code § 32.0231.

After two Texas pharmacies complained that the PBM's reimbursement rates were too low, Navitus responded that it "is not currently accepting alterations to the pricing."

As the idea of mandating a Medicaid pharmacy benefits carve-in was making its way through the legislative process, it had been met with opposition from various pharmacy interests, who disputed the anticipated cost savings to be achieved through managed care, decried perceived potential abuses by PBMs, and advocated policy alternatives that included modifications to the existing Vendor Drug Program. Appellant American Pharmacies—a member-owned cooperative of independent pharmacies—was active in these legislative advocacy efforts, either directly or through an organization known as the Texas Pharmacy Business Council. Having suffered adverse outcomes in the Legislature's enactment of S.B. 7 and with HHSC proceeding to implement the pharmacy benefits carve-in despite its vocal opposition, American Pharmacies resorted to the Judicial Branch.[11] On August 29, 2011, it sued HHSC and its executive commissioner seeking

---

[11] The undisputed evidence reflects that American Pharmacies' counsel contacted HHSC in response to its May 27, 2011 notice of intent to seek the federal waiver, requested a copy, and indicated the company's intent to offer comment in opposition to the agency's attempts to obtain the waiver. After HHSC completed the final version of the waiver request and submitted it to CMS, the agency transmitted a copy to counsel. Thereafter, American Pharmacies' general counsel wrote HHSC complaining that the company had not been afforded the opportunity to comment in opposition to the waiver prior to its submission to the federal government. Counsel likewise complained that the company had been misled by agency staff as to the timing of public comment and demanded that the waiver request be withdrawn to allow for a pre-submission comment period. Similarly, in the proceedings below, American Pharmacies emphasized various email communications with agency staff that, in its view, evidenced a "runaround" regarding the timing of comment opportunities. However, the notice requirements applicable to HHSC waiver requests do not prescribe a comment period, *see* Tex. Hum. Res. Code § 32.0231, and American Pharmacies does not appear to press these complaints on appeal apart from its arguments (discussed below) that HHSC failed to comply with the APA's rulemaking requirements before the complained-of actions.

11

declaratory and injunctive relief to restrain the agency's ongoing efforts to implement the prescription drug carve-in. It subsequently amended its petition on September 11, 2011.

As its pleadings were amended, and as relevant to its issues on appeal, American Pharmacies asserted essentially three theories or grounds for relief predicated on HHSC's actions to implement the pharmacy benefits carve-in as of date of its petition:

- First, American Pharmacies asserted that because HHSC's actions embodied or reflected a shift from traditional fee-for-service reimbursement to managed care, those actions evidenced the "adopt[ion] [of] changes in departmental policy" within the meaning of section 22.019 of the Human Resources Code. *See* Tex. Hum. Res. Code § 22.019(b). Section 22.019 requires HHSC to "adopt any changes in departmental policy in accordance with the rulemaking provisions of Chapter 2001, Government Code," i.e., the APA. *See id.*; *see also* Tex. Gov't Code §§ 2001.021–.041 (APA rulemaking provisions). It is undisputed that HHSC had not followed the APA rulemaking regimen prior to undertaking the complained-of actions.[12] Consequently, American Pharmacies reasoned, HHSC's actions were void and invalid.

- Second, American Pharmacies asserted that in applying for the federal waiver, HHSC made a "state agency statement of general applicability that . . . implements . . . policy" that constituted a "rule." *See* Tex. Gov't Code § 2001.003(6) (APA definition of "rule"). Accordingly, American Pharmacies contended, the statement was invalid for failure to comply with the APA's rulemaking procedures.

- Third, American Pharmacies asserted that HHSC (or, as a formal matter, its executive commissioner in his official capacity[13]) was acting *ultra vires* of statutory authority both in failing to comply with the APA's rulemaking procedures and in seeking to implement the pharmacy benefits carve-in before the period permitted by APA section 2001.006. *See id.* § 2001.006 (authorizing agencies to adopt rules "or take other administrative action" in interim between legislation's gubernatorial approval (or equivalent) and its effective date).

---

[12] Generally stated, the APA's rulemaking procedures require an agency to provide: (1) public notice; (2) an opportunity for comments; and (3) a reasoned justification for the rule enacted. *See* Tex. Gov't Code §§ 2001.023, .029, .033; *see also McCarty v. Texas Parks & Wildlife Dep't*, 919 S.W.2d 853, 854 (Tex. App.—Austin 1996, no writ).

[13] *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (requiring that *ultra vires* suits be brought against state actors in their official capacities).

Based on these theories, American Pharmacies sought declarations against HHSC that the agency's actions were invalid as a "policy change" and "rule" that failed to comply with the APA's rulemaking requirements. It further sought declarations against HHSC's executive director, in his official capacity, that the actions were *ultra vires* of the agency's statutory authority. It likewise sought injunctive relief to restrain HHSC and its executive commissioner from "implementing the Prescription Drug Carve-In without meeting the APA rulemaking requirements."

Both HHSC and its executive commissioner interposed a plea to the jurisdiction invoking sovereign immunity, attaching evidence. American Pharmacies responded, also with evidence. Following a hearing at which no further evidence was presented, the district court signed orders granting both pleas to the jurisdiction and dismissing all of American Pharmacies' claims. This appeal ensued.

## ANALYSIS

American Pharmacies brings three issues on appeal. In its first two issues, American Pharmacies urges that its pleadings and evidence were sufficient to invoke the district court's subject-matter jurisdiction under section 2001.038 of the APA to issue declaratory and injunctive relief against HHSC to restrain the agency's procedurally invalid adoption of a "rule" or "changes in departmental policy." In its third issue, American Pharmacies argues that its pleadings and evidence invoked the district court's jurisdiction to issue declaratory and injunctive relief against HHSC's executive commissioner, in his official capacity, to restrain actions *ultra vires* of the agency's statutory authority.

13

**APA section 2001.038**

Section 2001.038 of the APA waives sovereign immunity to the extent of creating a cause of action for declaratory relief regarding the "validity" or "applicability" of a "rule" if "it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038; *see El Paso*, 247 S.W.3d at 714; *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 700 (Tex. App.—Austin 2011, no pet.). Consequently, to come within section 2001.038's waiver, American Pharmacies must be seeking relief regarding a "rule." A "rule" under the APA:

(A)     means a state agency statement of general applicability that:

     (i)     implements, interprets, or prescribes law or policy; or
     (ii)     describes the procedure or practice requirements of a state agency;

(B)     includes the amendment or repeal of a prior rule; and

(C)     does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Tex. Gov't Code Ann. § 2001.003(6).

American Pharmacies insists that it has asserted two sets of claims that come within section 2001.038's waiver of immunity. In its first issue, it argues that it invoked section 2001.038's waiver through its complaints that HHSC undertook "changes in department policy" without following the APA's rulemaking requirements, as section 22.019 of the Human Resources code would have required it to do. *See* Tex. Hum. Res. Code § 22.019(b) (mandating HHSC follow APA rulemaking procedures when adopting changes in departmental policy). An obvious flaw in

14

American Pharmacies' argument, albeit not one emphasized by appellees,[14] is that its claims regarding asserted violations of section 22.019 do not purport to complain of any "rule," as section 2001.038 requires, but only of "changes in departmental policy." As American Pharmacies acknowledges in its briefing, a "change in departmental policy" as contemplated in section 22.019 is not the same as a "rule," a conclusion that is readily apparent from both the textual distinctions in the terms ("rule" versus "policy") and the fact that the Legislature saw fit to expressly extend the APA's rulemaking requirements (which would already have applied to a "rule") to "changes in departmental policy." *See DeQueen*, 325 S.W.3d at 636 (noting that we read statute's words in context of the whole statute); *In re Estate of Nash*, 220 S.W.3d 914, 918 (Tex. 2007) (noting that courts "should avoid, when possible, treating statutory language as surplusage"); *Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 838 (Tex. App.—Austin 2001, pet. denied) ("We will avoid a construction that creates a redundancy or renders a provision meaningless.").[15] In short, adopting "changes in departmental policy" as contemplated by section 22.019 may be subject to APA rulemaking requirements, but that does not make "changes in departmental policy" into "rules" that can be challenged under APA section 2001.038. At the

[14] *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95–96 (Tex. 2012) (holding that sovereign immunity deprives courts of subject-matter jurisdiction and is an issue that may be raised for the first time on appeal); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (holding that subject-matter jurisdiction may be raised for the first time on appeal by the parties or by the court).

[15] American Pharmacies agrees that section 22.019(b) addresses a class of "policy changes" that are not "rules," observing that the provision's imposition of APA rulemaking requirements would be redundant if it were otherwise. In further support, it emphasizes a distinction between the "adoption" of "departmental policy" under Human Resources Code section 22.019(b) and the "implementation" of "policy" under the APA's definition of "rule," urging that "adoption" of policy must logically precede its "implementation."

15

very least, section 2001.038 fails to waive sovereign immunity as to American Pharmacies' section 22.019(b) complaint with the requisite "clear and unambiguous language." *See* Tex. Gov't Code § 311.034. We overrule American Pharmacies' first issue.

In its second issue, American Pharmacies contends that it has asserted a claim within section 2001.038's waiver by purporting to challenge a "rule" within the APA definition—the prescription drug carve-in, "as stated explicitly in the Waiver [request]" to the federal government. Specifically, American Pharmacies urges that HHSC's request for a waiver to implement the prescription drug carve-in is "a statement of general applicability" that "affects the public at large," so as to constitute a "rule" under the APA. *See* Tex. Gov't Code § 2001.003(6) (definition of "rule"). However, as we have previously explained, for an agency pronouncement to constitute a "rule," it must in itself have some legal effect on private persons. *See Sunset Transp.*, 357 S.W.3d at 702–04; *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 905 (Tex. App.—Austin 2009, no pet.). The waiver request had no such effect. To the contrary, the waiver request was a "proposal" that "[p]rescription drug benefits, *currently* provided under the [fee-for-services] program, *will be* carved into managed care benefit and capitation rates effective March 1, 2012." (Emphasis added.) In other words, HHSC *proposed* to carve in prescription drug benefits *if* CMS agreed to the waiver. It had no binding effect on anyone, and was not a "rule." We overrule American Pharmacies' second issue.

### *Ultra vires* **exception**

Our preceding holdings dispose of all of American Pharmacies' claims against HHSC, leaving only its claims against the agency's executive commissioner, in his official capacity.

16

In these remaining claims, American Pharmacies purported to invoke the district court's subject-matter jurisdiction via the *ultra vires* exception to sovereign immunity. Under the *ultra vires* exception, a plaintiff may sue a state officer, in his or her official capacity, to obtain prospective declaratory or injunctive relief restraining conduct that is beyond statutory or constitutional authority. *See Heinrich*, 284 S.W.3d at 372–73. The plaintiff must plead and ultimately prove facts that would actually constitute actions beyond legal authority. *See id.*; *Creedmoor–Maha*, 307 S.W.3d at 516 n.8 (quoting *Hendee v. Dewhurst*, 228 S.W.3d 354, 368–69 (Tex. App.—Austin 2007, pet. denied)). In its third issue, American Pharmacies insists that it pled or presented evidence of three violations of HHSC's statutory authority: (1) the adoption of a "rule" without complying with the APA's procedural requirements; (2) the adoption of a "change in departmental policy" without complying with the APA's procedural requirements, as Human Resources Code section 22.019(b) required; and (3) the implementation of the prescription drug carve-in before S.B. 7 took effect. We disagree.

Our disposition of American Pharmacies' second issue is likewise fatal to its allegations of *ultra vires* conduct in the adoption of a "rule." As for its remaining complaints, we note that as of its September 28, 2011 effective date, S.B. 7 mandated that HHSC's contracts with MCOs include the prescription drug benefit; i.e., that it implement the prescription drug carve-in. Moreover, under section 2001.006 of the Government Code, HHSC had discretion beginning July 19, 2011—the date the Governor signed S.B. 7—to "adopt a rule or take other administrative action that [HHSC] determines is necessary or appropriate and that [HHSC] would have been authorized to take had the legislation been in effect at the time." *See* Tex. Gov't Code § 2001.006(a)(2), (b). Both of these events had transpired well before the district court ruled on the

17

executive commissioner's plea to the jurisdiction, which occurred in November 2011. Consequently, as of the district court's ruling, if not earlier, none of the facts on which American Pharmacies relies would constitute conduct that is *ultra vires* of the agency's statutory authority—indeed, S.B. 7 left HHSC no discretion but to implement the prescription drug carve-in.[16] Similarly, as of the district court's ruling, if not earlier, none of the facts on which American Pharmacies relies would amount to "changes in departmental policy," as opposed to compliance with a policy mandate imposed by the Legislature. Although American Pharmacies attempts to focus on earlier actions by HHSC, these claims are in the nature of retroactive relief, seeking to "undo" prior acts. Such relief goes beyond the proper scope of the *ultra vires* exception and is barred by sovereign immunity. *See Heinrich*, 284 S.W.3d at 376 (holding that *ultra vires* claimant was entitled to prospective relief only because retroactive relief is barred by sovereign immunity); *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 119–120 (Tex. App.—Austin 2007, no pet.) (holding that sovereign immunity barred *ultra vires* claim seeking to invalidate previously executed state contract because that remedy was retrospective in nature). We overrule American Pharmacies' third issue.

---

[16] SB 7 provides explicit direction to HHSC regarding "implementation" of this legislation:

> It is the intent of the legislature that the Health and Human Services Commission take any action the commission determines is necessary and appropriate, including expedited and emergency action, to ensure the timely implementation of the relevant provisions of this bill and the corresponding assumptions reflected in H.B. No. 1, 82nd Legislature, Regular Session, 2011 (General Appropriations Act), by September 1, 2011, or the effective date of this Act, whichever is later, including the adoption of administrative rules, the preparation and submission of any required waivers or state plan amendments, and the preparation and execution of any necessary contract changes or amendments.

*See* Act of June 27, 2011, 82d Leg., 1st C.S., ch. 7, § 16.01, 2011 Tex. Gen. Laws 5390, 5463.

## CONCLUSION

Having overruled each of American Pharmacies' issues on appeal, we affirm the district court's judgment.

_____
Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Henson
    Justice Henson Not Participating

Affirmed

Filed:   June 27, 2013

19